260

DAVID UNTERBERG et al., Appellants, *v.* THERM-AIR MFG. CO., INC.,
Respondent.

First Department, February 20, 1964.

*Abbie Goldstein* for appellants.

*Benjamin B. Hersh* of counsel (*Louis Okin* and *Sam W. Galowitz* with him on the brief), for respondent.

*Per Curiam.* Defendant corporation desired to make a public offering of its stock. For this purpose it entered into a contract with G. Everett Parks & Co. (herein Parks) to underwrite the proposed issue. Plaintiffs were attorneys for Parks. A registration statement to be filed with the Securities and Exchange Commission (SEC) was an essential, and defendant desired

plaintiffs to collaborate with defendant's own attorneys in its preparation. A written contract of retainer was entered into, and it is on this contract that plaintiffs sued.

The contract provides that defendant will pay plaintiffs for the services they will render to Parks, the amount of which is fixed at $6,500; and that defendant will pay, in addition, $3,500 for services rendered in preparation of the registration statement, the latter services to be rendered under supervision of defendant's counsel. For convenience of defendant, it was provided that the payments required should be made $3,000 on signing of the underwriting agreement, $2,000 upon the registration becoming effective, and $5,000 upon sale of 12,500 shares of stock to be sold pursuant to the offering.

The agreement further provided: "If, through no fault of the undersigned, the Registration Statement is made the subject of a stop order or is withdrawn, or the undersigned, through no fault of this firm, is unable to file such Registration Statement, which inability is directly or indirectly attributable to you, in that event you shall be obligated to us for the total fee set forth herein, less the retainer previously provided for." The underwriting agreement was signed at the same time as this agreement, and defendant paid plaintiffs $3,000, as stipulated in their contract. Plaintiffs prepared a registration statement. This was materially revised by defendant's counsel. Plaintiffs protested the changes but, at defendant's direction, submitted the revised edition to the SEC. The latter found the statement failed to meet its requirements and advised that, unless it were withdrawn promptly, proceedings would be instituted to prevent its becoming effective. The statement was withdrawn. Shortly thereafter, Parks withdrew from the underwriting agreement. The underwriting agreement provided that Parks could do so at any time for any reason whatsoever.

Plaintiffs argue correctly that the provisions for filing the registration statement and for the sale of stock are not conditions for payment but merely events fixing the time of payment. But the qualification in the quoted paragraph shows when withdrawal is not to operate as a bar to payment. It is when "inability [to file the registration statement] is directly or indirectly attributable to you [the defendant]."

Here the trial court did not regard the effort to file a registration statement as finally terminated by the ruling or request of the SEC, and, in the ordinary course, efforts to comply with the commission's objections would be made. Such efforts, and the ability to file a statement, were terminated by Parks' withdrawal from the transaction — a cause not attributable either

directly or indirectly to the defendant. In that event, defendant would have no further liability.

That this is no mere technical determination is evident once the underwriting agreement is read, in that defendant agrees to pay Parks' expenses, including its counsel fees, up to $10,000. In that connection, it was further stipulated that, should Parks exercise its right to withdraw, defendant's liability for expenses would be curtailed and, specifically, liability for Parks' counsel fees would be limited to $4,000. The agreement on which plaintiffs sue merely implemented one aspect of the underwriting agreement.

The judgment should be affirmed, with costs.

RABIN, J. (dissenting). I dissent and vote to reverse the judgment appealed from and to award judgment to the plaintiffs.

The retainer agreement is clear that in the event " the Registration Statement is made the subject of a stop order or is withdrawn " the defendant " shall be obligated  *  *  *  for the total fee set forth herein " unless the stop order or the withdrawal was occasioned through the fault of the plaintiffs. The event contemplated occurred here. The registration statement was withdrawn because of a threatened stop order. And such withdrawal was not occasioned through any fault of the plaintiffs. The proof does not establish any such fault and, indeed, the defendants admit that there was no fault on the part of the plaintiffs that occasioned such withdrawal.

There is another provision in the same paragraph of the retainer agreement which has reference to the liability for the retainer fee. That provision applies only in the event of the inability of the plaintiffs to file the registration statement by reason of the fault of the defendant. We are not concerned with such contingency and it has no bearing on the determination of this case because, in fact, the registration statement was filed. Nor are we concerned with whether it was the underwriter or the defendants or both that caused the registration statement to be withdrawn or which of these was to blame for it. The retainer agreement contemplates a withdrawal and the only contingency that would nullify the right of the plaintiffs to their fee is if such withdrawal was through the fault of the plaintiffs. It is otherwise unqualified.

The provision in the underwriting agreement limiting the defendant's expenses in the event of withdrawal by the underwriter does not in any way affect the plaintiffs' right to the fee stipulated in the retainer agreement. The underwriting agreement — to which the plaintiffs were not parties — merely

spells out the obligations of the defendant vis-a-vis the underwriter. If the underwriting agreement were in any wise to affect the explicit obligation of the defendant to the plaintiffs, the retainer agreement should have so expressly stated. It does not. Moreover, it should be noted that the underwriters only withdrew from the underwriting agreement after the defendants had withdrawn the registration statement.

The record is clear that the plaintiffs performed the services contemplated to be performed by them. If there were defects in the registration statement it was through no fault of theirs. On the contrary they raised objections to the changes made by defendant's counsel, under whose supervision they were obliged to work. There is no reason why they are not entitled to their fee.

McNALLY, STEVENS and STEUER, JJ., concur in *Per Curiam* opinion; RABIN, J., dissents and votes to reverse in opinion in which BREITEL, J. P., concurs.

Judgment affirmed, with costs to respondent.